[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14592
Non-Argument Calendar
_____

D.C. Docket No. 2:18-cr-00252-RDP-JEO-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BOB COTCHERY, III,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(November 18, 2020)

Before MARTIN, BRANCH, and FAY, Circuit Judges.

PER CURIAM:

Bob Cotchery appeals his sentence for possession with intent to distribute fentanyl. Cotchery argues his sentence was improper because the district court committed procedural error by relying on clearly erroneous facts in applying a two-level guidelines enhancement for reckless endangerment during flight under U.S.S.G § 3C1.2. Because the record supports the application of the enhancement, we affirm.

## I.      Background

While patrolling a residential area in Alabama, Officers Scott and Godbee attempted to pull over Cotchery for driving without a visible tag, running a stop sign, and turning without a signal.[1] Officer Scott testified that after he and Officer Godbee turned on their lights, Cotchery initially slowed down and moved towards the curb like he was going to stop. But instead, Cotchery continued driving, ran through another stop sign, and turned a corner onto another street without signaling. Then Cotchery abandoned his car while it was still moving and ran from the two pursuing officers.[2] Cotchery ran into an alley in the residential neighborhood with the two officers running closely behind. Cotchery then crouched down between a house and a vehicle. Moments later, Officer Godbee

---

[1] Officer Scott and Officer Godbee both testified that Cotchery was driving without a visible tag. Only Officer Godbee testified that Cotchery ran a red light and turned without a signal before the officers attempted to pulled him over.

[2] Officer Godbee's testimony was consistent with Officer Scott's except that Godbee indicated that Cotchery pulled over before he fled the vehicle.

caught up to Cotchery standing beside the vehicle, pulled out his gun, ordered Cotchery to get on the ground, and arrested him.  The owner of the vehicle Cotchery crouched beside observed Cotchery place something under the front tire of the eyewitness's car.  A search of the tire revealed a Ziploc bag containing approximately 494.8 grams of a fentanyl and caffeine mixture.[3]  A jury found Cotchery guilty of possession with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

Prior to sentencing, the United States Probation Office prepared a presentence investigation report ("PSI") recommending that Cotchery receive a two-level guidelines enhancement under § 3C1.2 for recklessly creating a substantial risk of death or serious bodily injury to another person in the course of fleeing from law enforcement.  Based on a total offense level of 32 and a criminal history category of I, Cotchery's applicable guidelines range was 121 to 151 months' imprisonment.  Cotchery objected to the § 3C1.2 enhancement.

At sentencing, Cotchery argued that flight alone is insufficient to warrant the enhancement and the evidence did not support the contention that the "car chase" was dangerous or occurred at a high rate of speed.  Cotchery also disputed the contention that he fled from the vehicle while it was still moving.  The district

---

[3] At trial, a DEA chemist testified that the substance was a mixture of fentanyl and caffeine, with a total mass of approximately 494.8 grams.  The proportion of fentanyl to caffeine was not tested.

court inquired as to the inherent danger in discarding a bag of fentanyl in a residential area, and Cotchery acknowledged that it posed a danger to others. Nevertheless, he argued that the guidelines account for the danger of fentanyl and that because the purity of the fentanyl in this case was unknown, it was speculation to assume that it was necessarily toxic.

The district court overruled Cotchery's objection and applied the enhancement. The district court explained that it based the enhancement on four primary factors: (1) a car chase ensued when officers attempted to pull Cotchery over; (2) Cotchery jumped out of the vehicle while it was still moving, which created a substantial risk that it could have rolled into someone's house, another car, or a pedestrian in the neighborhood; (3) discarding fentanyl in a residential neighborhood created a substantial risk of death or serious physical injury to others; and (4) Cotchery's "act of getting down and hunching behind a car and then springing up from behind the car when the police were approaching." The district court sentenced Cotchery to 121 months' imprisonment, the low end of his advisory guideline range. Cotchery renewed his objections to the guidelines calculation and the overall sentence. This appeal followed.

## II.    Standard of Review

We review a district court's application of a sentencing enhancement *de novo*, and its factual findings in support of an enhancement for clear error. *United*

4

*States v. Matchett*, 802 F.3d 1185, 1191 (11th Cir. 2015).  For a district court's factual finding to be clearly erroneous,  "after reviewing all of the evidence" we "must be left with a definite and firm conviction that a mistake has been committed."  *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004) (quoting *United States v. Foster*, 155 F.3d 1329, 1331 (11th Cir. 1998)).

### III.    Discussion

The Sentencing Guidelines provide for a two-level enhancement where the "defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer."[4]  U.S.S.G. § 3C1.2.  Flight alone is insufficient to trigger the enhancement.  *United States v. Wilson*, 392 F.3d 1243, 1247 (11th Cir. 2004).  Rather, the defendant's actions during flight must, through recklessness, create a situation where there is a substantial risk of death or serious bodily injury to another person.  *Matchett*, 802 F.3d at 1197.  However, "[§] 3C1.2 requires only that there was a substantial risk that something could have gone wrong and someone could have died or been seriously injured."  *Matchett*, 802 F.3d at 1198.  Thus, "we have held that conduct

---

[4] "Reckless" is defined as "a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation."  U.S.S.G. § 2A1.4, cmt. (n.1); *id.* § 3C1.2, cmt. (n.2) (adopting definition of "reckless" in U.S.S.G. § 2A1.4, cmt. (n.1)).

that could potentially harm a police officer or a third party is sufficiently reckless."

*Id.* (collecting cases).

In this case, the district court did not err in applying the enhancement because, considering the totality of Cotchery's conduct, he created a substantial risk of death or serious bodily injury to others during his flight from police.

First, the evidence supports the district court's finding that Cotchery recklessly created a substantial risk of serious injury or death when he did not immediately stop for police and led them on a short vehicle pursuit in a residential area, and then fled from his car while it was still moving.[5] Testimony established that after the officers turned on their lights, Cotchery initially slowed and appeared as if he would stop but instead continued driving, ran another stop sign, and made another turn without a signal. Admittedly, the "car chase" only lasted a short distance and the car may not have been moving at a fast speed[6] when Cotchery exited the vehicle, but that does not minimize the substantial risk of injury or death

---

[5] Although the two officers' trial testimony conflicted as to whether Cotchery pulled over and then fled or whether the car was still moving when he fled, the district court was entitled to choose between the two permissible views of the evidence when making its factual findings in support of the enhancement. *See United States v. Ruan*, 966 F.3d 1101, 1171 (11th Cir. 2020) ("A factual finding cannot be clearly erroneous when the factfinder is choosing between two permissible views of the evidence.").

[6] Cotchery is correct that no testimony established that he was traveling at a high rate of speed in fleeing from the officers. The district court emphasized that it was not giving stock to the labels "car chase" and "high rate of speed" that the PSI used to describe Cotchery's flight. Rather, the court was looking to the facts in the record that established that Cotchery initially seemed as if he would pull over when the officers turned on their lights but then he sped up, ran a stop sign, and turned the corner into a residential area without signaling.

that a moving unoccupied vehicle posed to people and property in the residential area.

Second, the evidence supports the district court's finding that Cotchery recklessly created a substantial risk of injury or death to others by discarding a bag containing fentanyl in a residential area.  Cotchery contends that the finding that the fentanyl was "dangerous" was clearly erroneous since the government did not present evidence that fentanyl is a dangerous drug in general or evidence of the purity of the fentanyl in this case.  Cotchery, however, conceded during the sentencing hearing that the discarded fentanyl posed a danger.  Furthermore, the district court's finding that the fentanyl, even without a specific purity finding, could be a danger to others who encountered it is a permissible inference based on the court's prior knowledge and experiences.[7]  *See United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009) ("There is no requirement that sentencing judges confine their considerations to empirical studies and ignore what they have learned from similar cases over the years.  Indeed, one of the reasons district courts are given such wide latitude in sentencing is their experience in handling criminal cases."); *United States v. Chavez*, 584 F.3d 1354, 1367 (11th Cir. 2009) (stating

---

[7] The district court acknowledged, from its prior knowledge and experience, the uniquely dangerous nature of fentanyl as compared to other drugs.  The court said during sentencing that "fentanyl is more powerful than heroin" and "there's a substantial risk of danger or injury or affecting health if you *handle* fentanyl."

7

that the district court is "free to make" reasonable inferences but cannot rely on an inference that is "speculative to the point of being clearly erroneous").

Accordingly, the above findings of fact were supported by the record and were not clearly erroneous.[8]  Based on these findings of fact, the district court did not err in applying the § 3C1.2 enhancement.  Consequently, we affirm Cotchery's sentence.

**AFFIRMED**.

---

[8] We agree with Cotchery that there was insufficient evidence to support the fourth factor the court cited in support of the U.S.S.G. § 3C1.2 enhancement—that Cotchery hid behind a vehicle and then essentially "spr[ung] up" at officers.  Nevertheless, for the reasons explained above, the § 3C1.2 enhancement was warranted by Cotchery's other reckless conduct that created a substantial risk of serious physical injury or death to others.